## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WALLY M. DEROSE

    Plaintiff,

        v.

CONDOLEEZZA RICE, SECRETARY
OF STATE,[1] ET AL.,

    Defendants.

Civil Action No.  04-0338 (JDB)

## MEMORANDUM OPINION

    More than fourteen years have passed since plaintiff Wally DeRose left his job with the

State Department at age 52.  Having failed in his efforts to obtain reappointment with the agency,

he initiated an administrative complaint alleging that the State Department's refusal to re-hire him

violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a.  In a Final

Agency Decision ("FAD") by the agency's Department of Equal Employment Opportunity and

Civil Rights ("EEO Office") issued in 2001, plaintiff won a judgment against defendants that,

among other things, awarded plaintiff ten years of backpay and required defendants to reappoint

plaintiff to his former position and restore any lost retirement benefits.  Neither plaintiff nor

defendants appealed the FAD to the Equal Employment Opportunity Commission ("EEOC"), but

plaintiff subsequently concluded that defendants had not fulfilled the requirements of the FAD

---

[1] The Court has substituted the current Secretary of State as a defendant in place of her predecessor, Colin L. Powell, who had been party to this suit in his official capacity only.  See Fed. R. Civ. P. 25(d)(1).

and petitioned the EEOC in May 2002 for an order of enforcement.  The EEOC's Office of

Federal Operations denied that petition in March 2003, finding no evidence of agency

noncompliance.  Thereafter, plaintiff initiated this lawsuit, pursuant to the ADEA, seeking a

judicial interpretation of the FAD's terms; a declaration that defendants had failed to comply with

the FAD, as interpreted; and a court order directing the State Department to comply with the FAD.

Now pending before this Court is defendants' motion to dismiss for failure to state a claim upon

which relief can be granted or, in the alternative, for summary judgment.  For the reasons that

follow, the Court concludes (1) that it has jurisdiction, pursuant to 28 U.S.C. § 1331, over an

ADEA-based claim in which a federal employee or applicant seeks enforcement of a favorable

Final Agency Decision, even when the plaintiff does not allege that the agency's failure to comply

with the FAD was itself based on unlawful discrimination or retaliation; and (2) that defendants

are nonetheless entitled to judgment as a matter of law on plaintiff's claims.

## BACKGROUND

From November 1985 through August 1991 -- a period of nearly six years -- defendants

employed plaintiff as a Security Officer in the Chicago field office of what was then known as the

Bureau of Diplomatic Security (now called the Diplomatic Security Service).  See Pl.'s Opp'n

Mem at 1-2;  Defs.' Stmt. of Undisputed Facts at 1.  On August 24, 1991 -- just days before his

53rd birthday[2] -- he resigned for reasons that he says included harassment and discrimination by

managers on account of his age.  See Pl.'s Opp'n Mem at 1-2.  He subsequently filed an ADEA

claim against defendants that alleged he had been constructively discharged -- a claim that the

parties settled in 1994.  See id. at 2.  Beginning in 1992, and continuing over a period of nearly six

_____

[2] Plaintiff was born on August 27, 1938.  See Defs.' Ex. 1.  He is now 67 years old.

years, defendant sought, but was denied, reappointment to his former position at his former pay grade of FP-4.  See id.

On January 22, 1998, plaintiff filed a complaint with the State Department's EEO Office in which he charged that defendants' refusal to re-hire him constituted unlawful age discrimination and reprisal for protected activity.  Three years later, on January 30, 2001, the EEO Office issued a Final Agency Decision that concluded that defendants had violated the ADEA in their hiring decisions regarding plaintiff and set forth six remedies.  See Pl.'s Opp'n Mem at 2;  Defs.' Stmt. of Undisputed Facts at 1.  On May 22, 2001, the EEO Office amended the FAD to withdraw two of the remedies.  See Pl.'s Opp'n Mem at 2;  Defs.' Stmt. of Undisputed Facts at 2.  Although plaintiff was entitled to appeal the FAD or to reject the agency's judgment and proceed with a separate civil suit, he did neither.  Likewise, the State Department acquiesced in the EEO Office's FAD.  The FAD, as amended, provided the following four remedies:

I.      The Department will expeditiously offer Complainant reappointment to a Foreign Service Diplomatic Security Agent FP-4 position, with back pay from February 1992.  Should Complainant decline that offer, his entitlement to backpay and related benefits shall terminate as of the date of his declination.

II.     The Department will fully restore any retirement benefits that would have accrued from 1992 to the date that Complainant's reappointment becomes effective.

III.    The Department will expunge from Complainant's personnel records any references or documents to the Stipulation of Settlement Agreement executed on June 6, 1994.

IV.     The Department will allow the Complainant to inspect his personnel file and review all performance evaluations contained therein.

See Pl.'s Opp'n Mem at 3-4;  Defs.' Stmt. of Undisputed Facts at 2-3.

Only the first two remedies are at issue in this civil action, which plaintiff styles as an "enforcement action" under the ADEA.  Plaintiff alleges that defendants failed to comply with the

terms of the FAD's first remedial order because (1) defendants' offer of reappointment to an FP-4

position was not made "expeditiously," thereby denying him the benefit of an interim promotion

to a higher pay grade; (2) the agency's calculation of backpay did not include amounts plaintiff

would have received for Administratively Uncontrollable Overtime ("AUO"); and (3) the

reappointment offer was improperly conditioned upon plaintiff's attendance at a training session.

See Am. Compl. at 5.  Plaintiff further alleges that defendants violated the FAD's second remedial

order by using an incorrect formula to calculate his retirement pay.  See id.

Because of this alleged noncompliance, plaintiff did not accept defendants' offer of

reappointment commencing May 20, 2002, and defendants interpreted that as a declination under

the terms of the FAD.  Consistent with governing regulations, plaintiff filed a complaint with the

EEOC on May 16, 2002, seeking enforcement of the FAD.  See Defs.' Ex. 20.  Following the

EEOC's March 21, 2003, denial of his petition for enforcement -- in which the Commission found

that DeRose "ha[d] not established that the agency has not complied with [the FAD]," see Am.

Compl. Ex. B at 5; Defs.' Stmt. of Undisputed Facts at 4 -- plaintiff commenced this civil action

on June 24, 2003, in the United States District Court for the Southern District of New York.  See

DeRose v. Powell, Docket Sheet, No. 03-CV-4613 (S.D.N.Y.).  On February 20, 2004, that court

ordered the case transferred here, pursuant to 28 U.S.C. § 1406(a), and defendants thereafter filed

their motion to dismiss or, in the alternative, for summary judgment on May 27, 2005.

## ANALYSIS

I.      **Subject-matter Jurisdiction**

A.      **Overview**

As a court of limited subject-matter jurisdiction, a federal district court has an "affirmative

obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).[3]  That means that this Court cannot overlook a potential defect in its jurisdiction simply because the parties fail to call it to the Court's attention.  Nor may the Court "presume the existence of jurisdiction in order to dispose of a case on other grounds." Tuck v. Pan Am. Health Org., 668 F.2d 547, 549 (D.C. Cir. 1981).  Although courts frequently find it unnecessary to address jurisdiction at length (or even at all) in their opinions, a conclusion that subject-matter jurisdiction exists is implicit in any ruling that resolves a non-jurisdictional question because, without jurisdiction, a federal court "has no authority to decide other potentially dispositive issues" in a case.  See Herron v. Veneman, 305 F.Supp. 2d 64, 71 (D.D.C. 2004).

### B.    Enforcement Action Arising Under the ADEA

The complaint in this case invokes the general federal-question jurisdiction statute.  See Am. Compl. at 4; 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  To get into federal court under this jurisdictional grant, plaintiff must show that his cause of action comes from a federal statute.[4]  Plaintiff asserts that the ADEA itself permits a cause of action (which he terms an "enforcement action," Pl.'s Opp'n Mem. at 3) by a federal employee to obtain the relief he seeks -- namely, a court order requiring an agency to comply with an administrative decision.  See Am.

---

[3] In determining whether it has jurisdiction to hear a case, the Court may consider materials outside the pleadings, so long as it still accepts the factual allegations in the complaint as true.  See Jerome Stevens Pharmaceuticals, Inc. v. FDA, 402 F.3d 1249, 1253-54 (D.C. Cir. 2005).

[4] There has been no suggestion in this case that plaintiff's cause of action arises under non-statutory federal law.

Compl. at 4-5.  Although defendants do not take issue with the assertion that the ADEA permits

such an enforcement action,[5] the Court cannot obtain subject-matter jurisdiction by virtue of party

waiver.  Moreover, this interpretation of the ADEA's remedial scheme can hardly be deemed

settled and may, in fact, be a matter of first impression.  Ultimately, however, the Court

concludes, for the reasons that follow, that precedent supports a finding of jurisdiction, arising

under the ADEA, over plaintiff's "enforcement action."

     Enacted by Congress in 1967, the ADEA protects older members of the workforce from

disparate treatment by employers based on age.  See Kennedy v. Whitehurst, 690 F.2d 951, 955

(D.C. Cir. 1982).  In its original form, the law protected only employees in the private sector, but

Congress passed an amendment in 1974 that brought federal employees "under the Act's

protective umbrella."  Id.  Section 15 of the ADEA, codified at 29 U.S.C. § 633a, declares that, in

designated federal agencies, "[a]ll personnel actions affecting employees or applicants who are at

least 40 years of age ... shall be made free from any discrimination based on age."  29 U.S.C. §

---

    [5] Defendants do, however, dispute whether plaintiff's complaint should be treated as an enforcement action, arguing that plaintiff actually is seeking a *de novo* adjudication of the remedial order, which might create a defect in this court's subject-matter jurisdiction.  See Scott v. Johanns, 409 F.3d 466, 469 (D.C. Cir. 2005) (holding, in the context of a Title VII discrimination action, that remedies-only suits are jurisdictionally barred; under Title VII, federal employees may sue either to enforce a favorable final administrative disposition or to challenge a final administrative disposition by *de novo* court review of the entire case, but they may not limit court review to an independent adjudication of the remedies alone).  Plaintiff's opposition to defendants' motion to dismiss provided clarification about the relief sought by the complaint and, in so doing, largely removed such jurisdictional concerns.  In his opposition memorandum, plaintiff states that this civil action seeks only to have the court *enforce* the State Department's final decision on its own terms.  See Pl.'s Opp'n Mem. at 3 ("[T]he instant enforcement action ... involves only a claim by the Plaintiff that the Defendant failed to comply with its obligations pursuant to remedies 1 and 2" of the Final Agency Decision.); id. at 5-6 ("The issues in the instant lawsuit are: ... Whether the Defendant breached the Final Agency Decision ....").  The Court, therefore, will take plaintiff at his word and treat this action as one seeking *enforcement* of the administrative order.

633a(a).  The ADEA further provides that "any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal and equitable relief as will effectuate the purposes of [the ADEA]."  29 U.S.C. § 633a(c).  The Act does not refer specifically to a civil action to enforce a remedial order.

### 1.      Court authority to enforce judicial remedies

Of course, were a federal district court to order legal or equitable relief for a successful age-discrimination plaintiff under the ADEA's civil-suit provision, it would be within the court's jurisdictional authority to compel agency compliance with the court's remedial orders, such as through a motion for civil contempt filed by the party seeking enforcement.  See Degen v. United States, 517 U.S. 820, 823 (1996) ("Courts invested with the judicial power of the United States have certain inherent authority to protect their proceedings and judgments in the course of discharging their traditional responsibilities."); Shillitani v. United States, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); Marshall v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Inc., 593 F.2d 1297, 1302 (D.C. Cir. 1979) ("The power of a federal court to protect and enforce its judgments is unquestioned.").

### 2.      Court authority under ADEA to enforce agency-ordered remedies

Federal district courts, however, are not the only entities empowered to adjudicate ADEA claims against federal agencies or to remedy violations thereof.  The statute specifically authorizes the EEOC to enforce the Act's non-discrimination mandate within the federal workforce "through appropriate remedies, including reinstatement or hiring of employees with or without backpay" and empowers the commission "to issue such rules, regulations, orders, and instructions as it

deems necessary and appropriate to carry out its [enforcement] responsibilities." 29 U.S.C. §

633a(b).  Furthermore, the regulations that the EEOC has issued under the ADEA create a number

of administrative-level procedures by which aggrieved federal employees can obtain relief.  See

29 C.F.R. § 1614.101 et seq.  Although the ADEA makes these procedures voluntary rather than

mandatory for the claimant,[6] the regulations specifically authorize the agencies themselves to

issue remedial orders in cases where a claimant chooses to pursue relief through administrative

channels and the agency determines that wrongful discrimination occurred.  See 29 C.F.R. §

1614.501.  This scheme of administrative resolution also provides for appeals to the EEOC of any

final action taken by an agency on a discrimination complaint.  See 29 C.F.R. §§ 1614.401-402.

At all stages of the administrative process, the regulations contemplate that an aggrieved

employee may pursue a civil action in federal district court, as authorized by 29 U.S.C. § 633a(c).

See 29 C.F.R. §§ 1614.110(b), 1614.201(a) 1614.407, 1614.503(g).

>    Thus, as the D.C. Circuit has explained, the ADEA

> provides a federal government employee [with] two alternative avenues to judicial redress.
> First, the employee may bring a claim directly to federal court so long as, within 180 days
> of the allegedly discriminatory act, he provides the EEOC with notice of his intent to sue
> at least 30 days before commencing suit.  Second, the employee may invoke the EEOC's
> administrative process, and then sue if dissatisfied with the results.

---

    [6] See 29 U.S.C. §§ 633a(c), (d) (authorizing an ADEA claimant to file a civil action
regardless of whether he or she filed a complaint with the employing agency or EEOC, so long as
the claimant gives notice to the EEOC of intent to sue); see also 29 C.F.R. § 1614.201(a).  The
non-mandatory nature of administrative-level procedures is one notable difference between claims
brought under the ADEA and claims that are brought by federal employees or job applicants under
Title VII of the Civil Rights Act of 1964, to which the same remedial regulations apply.  In the
latter category of cases, claimants must exhaust their administrative remedies before bringing suit.
See 42 U.S.C. § 2000e-16(c) (Title VII claims against a federal agency are permitted only if the
claimant is "aggrieved by the [employing agency's or EEOC's] final disposition of [a] complaint"
or by the "failure [of the employing agency or EEOC] to take final action on [a] complaint" in a
timely manner).

Rann v. Chao, 346 F.3d 192, 195 (D.C. Cir. 2003) (citations omitted).  It is the scope of the second avenue to judicial review -- review that follows the completion of the administrative process -- that will determine whether the ADEA confers jurisdiction on this Court to resolve the present case.[7]  The novel question that the Court is called upon to decide is this: When a federal employee (or job applicant) obtains a favorable decision on an ADEA claim at the administrative level and does not appeal that decision or opt to pursue the discrimination claim separately in court -- thereby making the decision binding on the agency, 29 C.F.R. § 1614. 504(a) -- does that employee or applicant have any recourse in federal district court *under the ADEA* if he later concludes that the agency has failed to comply with the decision but does not allege that the agency's noncompliance was the result of unlawful discrimination?

The text of the ADEA itself offers scant guidance; it says only that "any person *aggrieved* may bring a civil action,"  29 U.S.C. § 633a(c) (emphasis added), but gives little indication of what it means for a federal employee to be "aggrieved" within the meaning of that provision, let alone whether the term encompasses a claimant who won a remedial order at the administrative level but believes the agency has failed to comply with that order.  Nor do the remedial regulations provide a definitive answer.  They mention in several provisions that a claimant may pursue a civil action in federal district court, but the regulations do not prescribe explicit

---

[7] The D.C. Circuit has observed that the ADEA and its implementing regulations *may* be read to require that a plaintiff, once he begins the administrative process, must reasonably pursue the process to exhaustion before filing a civil action.  See Rann, 346 F.3d at 195 (noting a split between the 6th Circuit and 9th Circuit on the one hand and the 3rd Circuit and the 5th Circuit on the other).  But the court expressly declined to resolve the question.  Id. at 196.  Exhaustion is not an issue in this case because the undisputed facts indicate that plaintiff followed all the procedures set out in the regulations, and, in any event, the defendants have not raised an exhaustion objection (which is waivable).

limitations on the scope of that right (although one regulatory provision does impose time limits on filing a civil action relative to certain events in the administrative process, see 29 C.F.R. § 1614.407). Furthermore, only two provisions of the ADEA regulations specifically address the situation of a successful claimant who seeks to enforce a remedial order. One provision addresses petitions for enforcement of EEOC orders, 29 C.F.R. § 1614.503, and the other sets out procedures for requesting EEOC enforcement of an agency-level decision or a settlement agreement, 29 C.F.R. § 1614.504. Neither of those provisions, however, directly addresses the situation the Court now confronts.

In these two remedial regulations, there is only one reference to the right of a claimant to file a civil action, and that is where the EEOC "has determined that an agency is *not* complying with a prior decision" *of the EEOC*. 29 C.F.R. § 1614.503(g) (emphasis added). In that situation, the regulation provides, a "complainant [has] the right to file a civil action for enforcement of the [EEOC] decision pursuant to ... the ADEA ... and to seek judicial review of the agency's refusal to implement the ordered relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 et seq., and the mandamus statute, 28 U.S.C. § 1361, or to commence *de novo* proceedings pursuant to appropriate statutes." Id. This regulation, however, is of little aid in answering the question before this Court because (1) plaintiff is seeking to enforce a remedial order obtained at the *agency level*, not an EEOC order, and (2) the regulation does not address whether the same enforcement mechanisms would be available if, as here, the EEOC made a finding of agency *compliance* rather that a finding of noncompliance.[8]

_____

[8] One federal district court, interpreting this regulatory provision in the context of an ADEA action that alleged agency noncompliance with an EEOC order following an EEOC finding that the agency *had* complied with the order, observed that "it is open to serious question

The second regulation that addresses enforcement of remedial orders, 29 C.F.R. § 1614.504, *does* deal with agency-level orders (as well as settlement agreements between a claimant and an agency), and it prescribes a series of steps that an ADEA claimant may take if he "believes that the agency has failed to comply with the terms" of a settlement agreement or a favorable agency-level decision.  See 29 C.F.R. § 1614.504(a).  That procedure includes an "appeal to the [EEOC]," 29 C.F.R. § 1614.504(b), and, "[i]f the Commission determines [on appeal] that the agency is not in compliance ... it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased," 29 C.F.R. § 1614.504(c).  Were the EEOC to issue such an order based on a determination of agency noncompliance (which did not happen in this case), any claim that the agency still had not complied would logically proceed under the just-discussed provisions of section 1614.503 (which might lead to a lawsuit, under the terms of section 1614.503), but nothing in section 1614.504 indicates what recourse, if any, is available where, as here, the EEOC makes a finding of agency *compliance*.  And section 1614.504, unlike section 1614.503, says nothing whatsoever about the possibility of a claimant filing a civil action in federal district court to obtain enforcement.  See Hansson v. Norton, 411 F.3d 231, 235 (D.C. Cir. 2005) (noting, in a case involving a settlement of ADEA and Title VII claims, that "29 C.F.R. § 1614.504 does not authorize [plaintiff] to file a Title VII action in district court," but not addressing whether it affirmatively forecloses such filing).  While it is possible to infer, based on the regulation's silence as to enforcement actions in

whether the action contemplated by [plaintiff] -- judicial review of the EEOC's *compliance* decision -- is permitted by statute or regulation."  Puckett v. Potter, 342 F.Supp. 2d 1056, 1064 (M.D. Ala. 2004) (emphasis added).  That court, however, did not need to decide the question because it determined that plaintiff's suit was, in any event, untimely.

court, that lawsuits are not available as a means of enforcement where the EEOC makes a

determination of agency compliance with a remedial order, there are indications to the contrary in

court opinions.

First, to the extent that the ADEA's civil-suit provision renders the administrative remedies

purely *optional* for claimants even after they have chosen to initiate such proceedings (which, as

noted above at footnote 7, is a matter upon which federal courts of appeals are divided but which

remains an open question in this Circuit), it would be odd, to say the least, to read the remedial

regulations as foreclosing the availability of judicial review.  In other words, if the ADEA permits

a federal employee or applicant to file suit without exhausting administrative remedies (i.e., to opt

out of the administrative-resolution process at any stage), then the administrative remedies ought

not be interpreted as exclusive.

Second, the D.C. Circuit has indicated that a cause of action that is not specifically

provided for in section 1614.504 -- a claim for breach of contract -- may be available to an ADEA

claimant who contends that an agency has refused to comply with the terms of a *settlement*

*agreement*.  See Hansson, 411 F.3d at 232 (holding that such a suit is a "contract claim against the

United States" and, therefore, would fall within the exclusive jurisdiction of the Court of Federal

Claims under the Tucker Act).  Thus, it would seem that the D.C. Circuit does not interpret

section 1614.504 as foreclosing otherwise available court remedies.

Third, other federal courts have implied or suggested in ADEA cases that a federal

employee may seek enforcement in court of a final agency decision that was favorable to the

employee.  In Sanders v. Reno, for example, the Fifth Circuit indicated that such judicial relief

was available as long as the plaintiff had first pursued all administrative procedures -- including

those provided in section 1614.504 -- to obtain enforcement.  See 186 F.3d 684, 685 n.1 (5th Cir.

1999) ("[W]e hold that a federal employee seeking enforcement of a [final agency decision on an

ADEA claim] must exhaust remedies.").  Unlike the plaintiff here, the plaintiff in Sanders had not

exhausted the 1614.504 procedures, so the Fifth Circuit affirmed the district court's dismissal of

the case.

  Fourth and finally, this Circuit, interpreting analogous provisions of Title VII,[9] has

definitively concluded that "complainants who prevail in the administrative process but who -- for

whatever reason -- fail to receive their promised remedy, may sue to enforce the final

administrative disposition."  Scott, 409 F.3d at 469; cf. Wilson v. Peña, 79 F.3d 154, 167-68 (D.C.

Cir. 1996) (concluding that a Title VII claimant was entitled to file suit to challenge the

correctness of an agency's computation of a backpay award once the EEOC failed to act on the

claimant's petition for enforcement within 180 days).  Accord Herron, 305 F.Supp. 2d at 75 ("[I]n

[Title VII] 'enforcement' actions, an aggrieved federal employee brings suit to enforce the terms of

a final agency action -- in particular, those in which an agency has found it has discriminated and

committed to certain remedies -- with which the agency has failed to comply."); Moore v. Devine,

780 F.2d 1559, 1560 (11th Cir. 1986) ("[D]istrict courts [must] enforce final EEOC decisions

favorable to federal employees when requested to do so.").  "In such enforcement actions, the

---

  [9] The statutory scheme of Section 15 of the ADEA is similar to that created by Title VII of
the Civil Rights Act of 1964, as amended.  See 42 U.S.C. § 2000e-16(c) (permitting federal
employees to bring suit for discrimination in personnel actions based on race, color, religion, sex,
or national origin); see also Lehman v. Nakshian, 453 U.S. 156, 167 n.15 ("Sections 15(a) and
15(b) of the ADEA ... are patterned directly after §§ 717(a) and (b) of the Civil Rights Act of
1964, as amended in March 1972 ....").  Indeed, with regard to claims of discrimination by federal-
sector employees, both laws implicate the same set of remedial regulations.  See 29 C.F.R. §
1614.101 et seq.

court reviews neither the discrimination finding nor the remedy imposed, examining instead only whether the employing agency has complied with the administrative disposition." Scott, 409 F.3d at 469; see also Herron, 305 F.Supp. 2d at 75 ("[F]ederal courts 'have uniformly granted requests for enforcement of favorable final agency and EEOC decisions without requiring de novo review of the merits of the discrimination claims.'") (quoting Moore, 780 F.2d at 1563).  Although, in a technical sense, none of these cases are dispositive of the question whether the ADEA creates a cause of action in district court for the enforcement of a favorable agency decision, the Court can find no meaningful way to distinguish them from the present situation other than to note that they involve a different statute.  But given how closely the language of section 15(c) of the ADEA, 29 U.S.C. § 633a(c), tracks the comparable provision of Title VII, 42 U.S.C. § 2000e-16(c), and given that Title VII permits a civil action only where the employee or applicant is "aggrieved by the final disposition of his complaint, or by the failure to take final action on his complaint," whereas the ADEA more broadly authorizes suit by "[a]ny person aggrieved," without further qualification, it would strain credulity for this Court to find that the ADEA's expansive language does not authorize such enforcement actions without also concluding that the above-referenced Title VII cases misstate the law.  But this Court is bound by the D.C. Circuit's authoritative interpretation of Title VII, and hence the Court is compelled to conclude that a federal employee who obtains a favorable judgment on an ADEA claim at the administrative level and who does not appeal that judgment or opt to litigate the entire claim separately may nonetheless sue in federal district court under the ADEA for enforcement of a remedial order associated with that judgment, even if the employee does not contend that the agency's alleged noncompliance was the result of unlawful discrimination.

Based on this conclusion, the Court finds that it has jurisdiction, pursuant to 28 U.S.C. § 1331, over plaintiff's ADEA claim seeking enforcement of the Final Agency Decision.[10]

## II.     Motion for Summary Judgment

### A.     Legal Standard

Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted or, in the alternative, a motion for summary judgment.  On a motion to dismiss for failure to state a claim, if either party submits matters outside the pleadings that are considered by the court, then the court shall treat the motion as one for summary judgment.  See Fed. R. Civ. P. 12(b) ("If, on a motion asserting [plaintiff's] ... failure to state a claim upon which relief can be

---

[10] In addition to asserting jurisdiction under section 1331, plaintiff also contends that jurisdiction is conferred by 28 U.S.C. § 1361, the mandamus statute, which grants federal district courts the authority to compel an officer of the United States to perform a non-discretionary or ministerial duty.  Because the Court concludes that plaintiff's enforcement action may be brought under the ADEA and section 1331, it need not explore this potential source of authority for judicial review of the State Department's actions.  See Judicial Watch, Inc. v. Nat'l Energy Policy Dev. Group, 219 F.Supp. 2d 20, 42 (D.D.C. 2002) (holding that "the mandamus statute may provide an avenue to remedy violations of statutory duties even when the statute that creates the duty does not contain a private cause of action" to enforce the duty).  Similarly, the Court need not consider the possibility (which was not raised by plaintiff) that jurisdiction exists under the judicial review provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704.

If, however, the Court is incorrect in its conclusion that there is an ADEA cause of action for enforcement of administrative remedies, then one or both of these statutes conceivably could provide plaintiff with an avenue for judicial review.  But review of agency action under either of these provisions would impose a substantial legal burden on plaintiff.  See, e.g., Senate Select Comm. on Presidential Campaign Activities v. Nixon, 366 F.Supp. 51, 57 (D.D.C. 1973) (explaining that, for a district court to exercise mandamus jurisdiction under 28 U.S.C. § 1361, the plaintiff must show that his "claim is clear and certain," that "the duty of the officer involved ... [is] ministerial, plainly defined, and peremptory," and that "[t]he duty sought to be exercised ... [is] a positive command [that is] so plainly prescribed as to be free from doubt"); 5 U.S.C. § 706 (requiring plaintiffs challenging agency action under the APA to show that the action was "arbitrary, capricious, [or] an abuse of discretion").  If plaintiff cannot survive a summary judgment motion on an ADEA-based claim for enforcement (which, as the Court explains below, he cannot), he likewise would be unable to prevail in a mandamus action or an APA-based challenge to the final agency decision.

granted, matters outside the pleading are presented to and not excluded by the court, the motion

shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all

parties shall be given reasonable opportunity to present all material made pertinent to such a

motion by Rule 56.").  Because both parties submitted matters outside the pleadings, the court

treats defendants' motion as one for summary judgment.

      Summary judgment is appropriate when the pleadings and the evidence demonstrate that

"there is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial

responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion

by "informing the district court of the basis for its motion, and identifying those portions of 'the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."

Id. (quoting Fed. R. Civ. P. 56(c)).

      In determining whether there exists a genuine issue of material fact sufficient to preclude

summary judgment, the court must regard the non-movant's statements as true and accept all

evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere

existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the

absence of evidence proffered by the non-moving party, a moving party may succeed on summary

judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations

-16-

omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

Where, as here, the Court would be the trier of fact on an issue if the case were to proceed to trial, the rules of summary judgment are altered.  In such a case, the "Court is not confined to deciding questions of law, but also may ... draw a derivative inference from undisputed subsidiary facts, even if those facts could support an inference to the contrary, so long as the inference does not depend upon an evaluation of witness credibility." Cook v. Babbitt, 819 F. Supp. 1, 11 & n.11 (D.D.C. 1993); see Ramallo v. Reno, 931 F. Supp. 884, 888 (D.D.C. 1996) ("Because the Court would be the ultimate trier of fact in this case if it went to trial, '[c]onflict concerning the ultimate and decisive conclusion to be drawn from undisputed facts does not prevent rendition of a summary judgment.'") (quoting Fox v. Johnson & Winsatt, Inc., 127 F.2d 729, 737 (D.C. Cir. 1942)).

## B.      Discussion

There are no genuine issues of material fact in dispute.[11]  Hence, resolution of defendants' motion for summary judgment will turn on whether defendants, based upon these undisputed facts, are entitled to judgment as a matter of law.  The Court is aware of no precedent establishing the evidentiary burden that plaintiff must meet in an enforcement action such as this,[12] but it need

---

[11] Plaintiff certainly is correct that the parties disagree on some factual details -- mainly with respect to State Department human resources policies, see Pl.'s Opp'n Mem. at 6 -- but the Court concludes that, even if all those factual disputes were resolved in plaintiff's favor, defendants still would be entitled to judgment as a matter of law.  In other words, the only factual disputes between the parties are *immaterial* to resolution of the legal claim.

[12] Were this a case in which the plaintiff had alleged that agency noncompliance was itself an illegal discriminatory act (e.g., motivated by age bias or retaliation for earlier protected activity), the plaintiff's burden would be dictated by McDonnell Douglas Corp. v. Green, 411 U.S.

not decide the proper standard because plaintiff has failed to carry his burden under any conceivable standard.[13]  Indeed, plaintiff has not produced even a "scintilla of evidence" of agency noncompliance.  See Anderson, 477 U.S. at 252.  Therefore the Court will conclude, as a matter of law, that the agency has complied with its FAD.

Because plaintiff's challenge is limited to the first and second remedies of the amended FAD, the Court need only resolve the following two questions: (1) Has the plaintiff shown that the State Department did not "expeditiously offer [plaintiff] reappointment to a Foreign Service Diplomatic Security Agent FP-4 position, with back pay from February 1992"?; and (2) Has the plaintiff shown that the State Department did not "fully restore any retirement benefits that would have accrued from 1992 to the date that complainant's reappointment becomes effective"?  The answer to both questions is no.

### 1.      Reappointment Offer

Plaintiff alleges that defendants failed to comply with the terms of the FAD's first remedial order -- the requirement of expeditious reappointment to an FP-4 position with backpay -- in three distinct ways.  First, by offering him reappointment to an FP-4 position commencing May 20, 2002, he asserts, the State Department effectively offered him a lower-paying position than he was entitled to under the FAD because the FAD was based on reappointment as of January 30, 2001

---

792 (1973), and its progeny.  But this is not such a case.

[13] Were plaintiff asking the Court to make a determination of noncompliance with a court order, plaintiff would be required to establish by *clear and convincing evidence* that the State Department violated the terms of the FAD.  See Armstrong v. Executive Office of the President, 1 F.3d 1274, 1289 (D.C. Cir. 1993) ("[C]ivil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence.") (citations and internal quotation marks omitted).

(the date of the decision), and had that reappointment offer been made "expeditiously" he likely would have been promoted to an FP-3 position during the intervening sixteen-month period.  See Am. Compl. at 5; Pl.'s Opp'n Mem. at 10-12.  Second, he argues, the agency failed to properly calculate backpay because it did not include amounts plaintiff would have received for AUO.  See Am. Compl. at 5.  And, third, plaintiff contends that the reappointment offer was improperly conditioned upon his attendance at a training session at the Federal Law Enforcement Training Center.  See id.; Pl.'s Opp'n Mem. at 6-10.

For plaintiff to prevail on his claim that he now is entitled under the FAD to appointment at an FP-3 pay grade, the Court would have to conclude, as an initial matter, that defendants did not "expeditiously" offer reappointment.  That is because, by its very terms, the FAD required only an offer of appointment at an FP-4 level if the offer was made in an expeditious manner.  On this point, however, plaintiff's opposition to the motion for summary judgment focuses only on whether plaintiff would have been entitled to a promotion from FP-4 to FP-3 on a non-competitive basis had he resumed work on January 31, 2001 (the day after the FAD was issued).  That argument obviously begs the question of whether the offer of reappointment effective May 20, 2002, was made "expeditiously."  Plaintiff has offered no evidence whatsoever to refute the timeline offered by defendants, which details a series of steps taken by the parties, beginning March 2, 2001, to facilitate plaintiff's reappointment.  See Defs.' Mem. in Supp. of Mot. for Summ. J. at 3-5; Def's Exs. 11-16.  Nor has plaintiff come forward with any proof that he objected to the delay.  Moreover, he has offered the Court no reason to suspect that defendants might have unduly postponed reappointment -- not surprising, in light of the fact that the agency had a financial incentive to do just the opposite because it was obligated under the FAD to provide

backpay to plaintiff up to the point of reappointment (or declination of the reappointment offer).

In any event, plaintiff has provided no evidence that a sixteen-month delay between the initial

FAD and the effective date of reappointment constituted a violation of the FAD's command to

"expeditiously offer" reappointment.  For purposes of this enforcement action, then, it is of no

moment that plaintiff might have earned a noncompetitive promotion by May 20, 2002, had his

reappointment following the issuance of the initial FAD been *immediate*, because the FAD did not

require immediate reappointment; it required only that the reappointment offer be given

"expeditiously."  Plaintiff has not shown that the offer was inconsistent with this requirement.

As for plaintiff's claim that defendants failed to comply with the FAD's reappointment

provision because defendants' calculation of backpay did not include AUO, plaintiff has neither

attempted to demonstrate his entitlement to such premium pay nor refuted defendants' contention

that he was eligible for (and that his backpay award reflected) Law Enforcement Availability Pay

("LEAP") as a substitute for AUO.  See Defs.' Ex. 19.  Indeed, although plaintiff included the

denial of AUO pay as part of his claim of noncompliance, see Am. Compl. at 5, his memorandum

in opposition to the motion for summary judgment does not contest this issue.  Accordingly, the

Court finds that plaintiff has failed to demonstrate defendants' noncompliance with the FAD

reappointment provision on this ground.

Finally, with respect to plaintiff's contention that defendants violated the terms of the

FAD's reappointment provision by conditioning the offer of reappointment on plaintiff's

attendance at a training session, the Court concludes that this allegation has no merit.  Nothing in

the FAD precluded defendants from assigning plaintiff to a refresher course after more than a

decade away from the job.  Furthermore, the Court is not impressed by plaintiff's attempt to

characterize the training requirement as a "condition" of reappointment, given that the training

was to have occurred at the outset of plaintiff's reappointment, not before.  If that were to

constitute a "condition" of reappointment then so would a requirement that plaintiff show up for

the first day of work at a particular time.  The FAD in no way purports to take away defendants'

discretion in managing its employee.  Whether or not the training requirement was consistent with

general State Department policies has no bearing on this enforcement action; if plaintiff believed

that, in being sent to training, he was being targeted for adverse treatment in retaliation for his

previous ADEA claim, he could have filed an independent complaint of discrimination, but he has

made no such allegation.

To recapitulate, the Court finds that plaintiff has failed to demonstrate defendants'

noncompliance with the FAD's requirement of expeditious reappointment to a FP-4 position with

backpay.

### 2.      Retirement Benefits

Plaintiff further alleges that defendants violated the FAD by failing to "fully restore any

retirement benefits that would have accrued from 1992 to the date that complainant's

reappointment becomes effective," as the FAD required.  Specifically, he alleges that he had

earned the right to retire with a "calculation of 1.7 percent instead of 1.0 percent," under

applicable law.  See Am. Compl. at 5.  But neither the complaint not the memorandum in

opposition to the motion for summary judgment provide any rationale for why plaintiff might be

entitled to this particular benefit or why the State Department's calculations might be erroneous.

Plaintiff cannot succeed in an ADEA enforcement action based on such an unsupported

allegation, particularly where defendants have come forward with a reasonable explanation for

their determination that 1.0 percent is the proper figure to use in calculating plaintiff's retirement

benefit.  See Defs.' Mem. in Supp. of Mot. for Summ. J. at 10-11 (explaining that to be eligible for

the "enhanced 1.7% pension" under the Foreign Service Pension System, defendant would have to

have twenty years of creditable service; at most, plaintiff had sixteen years of creditable service at

the time he declined the reappointment offer, including the ten years of service he lost as a result

of the agency's discriminatory refusal to re-hire him).  Thus the Court concludes that plaintiff has

not met his burden of demonstrating agency noncompliance with the FAD on this ground.

## CONCLUSION

For the foregoing reasons, and upon consideration of the entire record herein, the Court

will grant defendants' motion for summary judgment.  An order entering judgment for defendants

has been issued on this date.

_____/s/ John D. Bates_____
JOHN D. BATES
United States District Judge


Dated:   February 16, 2006


Copies to:

Wally M. DeRose
1624 Hartley Drive
Schereville, IN  46375

*Plaintiff*

Lawrence Ralph Berger, III
MAHON & BERGER
350 Old Country Road
Garden City, NY  11530

*Counsel for plaintiff*

-22-

Jeannette Anne Vargas
OFFICE OF THE U.S. ATTORNEY FOR THE SOUTHERN DISTRICT OF NEW YORK
33 Whitehall Street, 8th Floor
New York, NY  10004

Heather D. Graham-Oliver
OFFICE OF THE U.S. ATTORNEY FOR THE DISTRICT OF COLUMBIA
Judiciary Center Building
555 4th Street, NW, Room 10-818
Washington, DC  20530
Email: heather.graham-oliver@usdoj.gov

*Counsel for defendants*